# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

  Bond Foundry

CASE NO: 20-11793

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11

On 4/7/2022, I did cause a copy of the following documents, described below,

Order Approving Disclosure Statement

Disclosure Statement

BALLOT

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 4/7/2022

/s/ Mark Frankel
Mark Frankel

Backenroth Frankel & Krinsky, LLP
800 3rd Ave. Fl 11
New York, NY  10022
212 593 1100
mfrankel@bfklaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

Bond Foundry

CASE NO: 20-11793

**CERTIFICATE OF SERVICE**
**DECLARATION OF MAILING**

Chapter: 11

On 4/7/2022, a copy of the following documents, described below,

Order Approving Disclosure Statement

Disclosure Statement

BALLOT

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 4/7/2022

Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 3rd Ave. Fl 11
New York, NY  10022

PARTIES DESIGNATED AS "EXCLUDE" WERE NOT SERVED THE FOREGOING FILING AT THE LISTED ADDRESS
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" WERE SENT THEIR COPY OF ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

INTERNAL REVENUE SERVICE
C/O US ATTORNEY CLAIMS UNIT
ONE SAINT ANDREWS PLAZA RM 417
NEW YORK NY 10007

OFFICE OF THE UNITED STATES TRUSTEE
U.S. FEDERAL OFFICE BUILDING
201 VARICK STREET
SUITE 1006
NEW YORK NY 10014

UNITED STATES OF AMERICA
C/O U.S. ATTORNEY
86 CHAMBERS STREET
NEW YORK NY 10007

NYS DEPT OF TAX & FINANCE
BANKRUPTCY UNIT
PO BOX 5300
ALBANY NY 12205

STATE OF NEW YORK
ATTORNEY GENERAL S OFFICE
120 BROADWAY
NEW YORK NY 10271

CITY OF NEW YORK
NYC LAW DEPARTMENT
100 CHURCH ST
NEW YORK NY 10007

NYC DEPARTMENT OF FINANCE
66 JOHN STREET
NEW YORK NY 10038

BACKENROTH FRANKEL & KRINSKY
800 THIRD AVENUE
11TH FLOOR
NEW YORK NY 10022

NYC DEPT. OF ENVIRONMENTAL PROTECTION
59-17 JUNCTION BLVD
13TH FLOOR
ELMHURST NY 11373

AD RESULTS MEDIA
310 COMAL STREET 2ND FLOOR SUITE 249
AUSTIN TX 78702

ADP
1 PENN PLAZA 23RD FLOOR
NEW YORK NY 10119

AUSTIN EMS ASSOCIATION
310 COMAL STREET 2ND FLOOR SUITE 237
AUSTIN TX 78702

BADJUPITER
310 COMAL STREET 2ND FLOOR SUITE 248
AUSTIN TX 78702

BARUCH SINGER
95 DELANCEY STREET
NEW YORK NY 10002

BWAY.INC
PO BOX #1688
NEW YORK NY 10013

CAMERON WHITE
310 COMAL STREET 2ND FLOOR
AUSTIN TX 78702

CANON SOLUTIONS AMERICA INC.
300 COMMERCE SQARE BLVD.
BURLINGTON NJ 08016

CONQUEST FUNDS
310 COMAL STREET 2ND FLOOR SUITE 233
AUSTIN TX 78702

CONSOL PARTNERS
310 COMAL STREET 2ND FLOOR SUITE 203
AUSTIN TX 78702

COOPER ELECTRIC
29 W 38TH STREET 2ND FLOOR
NEW YORK NY 10018

COWORKRS LLC
55 BROADWAY 3RD FLOOR
NEW YORK NY 10006

DENISE SHANKLIN
310 COMAL STREET 2ND FLOOR SUITE 256
AUSTIN TX 78702

EDEN TECHNOLOGIES
54 GILBERT STREET
SAN FRANCISCO CA 94103

FOUNDRY AUSTIN OWNER LLC
823 CONGRESS STREET SUITE 600
AUSTIN TX 78701

FOUNDRY AUSTIN OWNER LLC
823 CONGRESS AVE SUITE 600
AUSTIN TX 78701

GREETLY
1805 S BELLAIRE STREET #501
DENVER CO 80222

INVICTUS GLOBAL MANAGEMENT
310 COMAL STREET 2ND FLOOR SUITE 229
AUSTIN TX 78702

PARTIES DESIGNATED AS "EXCLUDED" WERE NOT SERVED VIA USPS FIRST CLASS MAIL 04/21/2021 USING THE ADDRESS
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" WERE SERVED VIA ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

IWD AGENCY
310 COMAL STREET 2ND FLOOR SUITE 261
AUSTIN TX 78702

KATRISK LLC
310 COMAL STREET 2ND FLOOR SUITE 250
AUSTIN TX 78702

KIRU
310 COMAL STREET 2ND FLOOR SUITE 272
AUSTIN TX 78702

KRISTOPHER WOODS
310 COMAL STREET 2ND FLOOR
AUSTIN TX 78702

MI PADRINO
310 COMAL STREET 2ND FLOOR
AUSTIN TX 78702

MSB HOLDINGS
310 COMAL STREET 2ND FLOOR SUITE 221
AUSTIN TX 78702

NELLO WALL SYSTEMS INC
6685 SANTA BARBARA RD
ELKRIDGE MD 21075

ONEDIVERSIFIED LLC
2975 NORTHWOODS PKWY
NORCROSS GA 30071

PICNIK AUSTIN
310 COMAL STREET 2ND FLOOR SUITE 202
AUSTIN TX 78702

PREMIEM PARKING
601 POYDRAS STREET SUITE 1500
NEW ORLEANS LA 70130

RAVI COUTINHO
310 COMAL STREET 2ND FLOOR
AUSTIN TX 78702

REED SMITH LLP
599 LEXINGTON AVE
22ND FLOOR
NEW YORK NY 10022

SALESFORCE.COM INC
415 MISSION STREET 3RD FLOOR
SAN FRANCISCO CA 94105

SHELL OIL COMPANY
310 COMAL STREET 2ND FLOOR SUITE 207
AUSTIN TX 78702

SPECTRUM
43 W 23RD STREET
NEW YORK NY 10010

THE TRAVELERS INDEMNITY
310 COMAL STREET 2ND FLOOR
AUSTIN TX 78702

UNITY TECHNOLOGIES SF
310 COMAL STREET 2ND FLOOR SUITE 262
AUSTIN TX 78702

YARDI KUBE INC
430 S. FAIRVIEW AVE
GOLETA CA 93117

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                         Chapter 11


        Bond Foundry, LLC,                          Case no.  20-11793


                        Debtor.

--------------------------------------------------------x

**ORDER APPROVING DISCLOSURE STATEMENT, AND FIXING TIME FOR
ACCEPTANCES OR REJECTIONS OF PLAN, COMBINED WITH NOTICE
THEREOF**

                Disclosure Statement ("Disclosure Statement") under chapter 11 of the
Bankruptcy Code having been filed by Bond Foundry, LLC ("Proponent" or "Debtor") on
April 6, 2022, referring to the Plan of Reorganization filed by the Proponent on April 6, 2022
("Plan"); and it having been determined after hearing on notice that the Disclosure Statement
contains adequate information;

                IT IS ORDERED, and notice is hereby given that:


        A.      The Disclosure Statement is approved.


        B.      May 16, 2022 at 5:00 p.m. (EDT) is fixed as the last day for submitting
written acceptances or rejections to the Plan referred to above, and ballots indicating acceptance or
rejection of the Plan must be received by email sent to mfrankel@bfklaw.com or by delivery to
Backenroth Frankel & Krinsky, LLP, at its offices located at 800 Third Avenue, Floor 11, New York,
New York 10022, on or before May 16, 2022, at 5:00 p.m. (EDT), in order to be counted with regard to
acceptance or rejection of the Plan.


        C.      Within 3 days after entry of this order, the Plan, the Disclosure Statement,
and a ballot conforming to Official Form 14, shall be mailed to creditors, equity security holders
and other parties in interest, and shall be transmitted to the United States Trustee as provided in
Fed. R. Bankr. P. 3017(d).


        D.      May 25, 2022, at 10:00 a.m. (EDT), or as soon thereafter as counsel may
heard, is fixed for a telephonic hearing through www.court-solutions.com on confirmation of the
Plan (the "Hearing"), before the Honorable Lisa G. Beckerman, at the United States Bankruptcy
Court, One Bowling Green, New York, New York  10004.

    E. May 16, 2022 at 5:00 p.m. (EDT) is fixed as the last day for filing and serving written objections to confirmation of the Plan pursuant to Fed. R. Bankr. P. 3020(b)(1), which objections must be filed, served and received by the Proponent's attorneys and the Clerk of Court, with a courtesy copy to the United States Bankruptcy Court, One Bowling Green, New York, New York  10004

    F. You may be receiving this Order because you are a counterparty to an unexpired lease or executory contract with the Debtor.  The Plan provides for the assumption of all such unexpired leases and executory contracts.  The Debtor asserts that no counterparty has a claim for cure costs that arose before the August 2, 2020 filing of the Debtor's bankruptcy case, and that any unpaid liabilities that arose postpetition shall be paid in the ordinary course of business.  If you wish to object to the Debtor's assumption of the unexpired lease or executory contract or the Debtor's assertion that no cure cost is due and owing, objections must be filed, served and received by the Proponent's attorneys and the Clerk of Court, with a courtesy copy to the United States Bankruptcy Court, One Bowling Green, New York, New York  10004 no later than May 16, 2022 (EDT).  Objections will be heard at the Hearing on May 25, 2022 at 10:00 a.m. (EDT).  IF A COUNTERPARTY FAILS TO FILE AND SERVE A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE EXECUTORY CONTRACT OR UNEXPIRED LEASE.

Dated:  New York, New York
    April 6th, 2022

      /s/ Lisa G. Beckerman
      UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                    Chapter 11

      Bond Foundry, LLC,                         Case no.  20-11793

                 Debtor.
--------------------------------------------------------x

## **BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION**

      Bond Foundry, LLC ("Debtor" or "Proponent") filed a plan of reorganization dated April 6 , 2022 (the "Plan") for the Debtor in this case. The Court has approved the Proponent's Disclosure Statement with respect to the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Mark Frankel, Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York, 10022, (212) 593-1100, mfrankel@bfklaw.com.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

      You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class 2 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

      If your ballot is not received by Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York, 10022 on or before May 16, 2022 at 5:00 p.m. (EDT), and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

      If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.

## **ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class____claim against the Debtor in the

unpaid amount of $_____

(Check one box only)

[ ] ACCEPTS THE PLAN   [ ] REJECTS THE PLAN

Dated: _____

Print or type name of Creditor: _____

Signature: _____

Title (if corporation or partnership) _____

Address:

_____

_____

_____

_____

**Return this ballot so as to be received on or before May 16, 2022 at 5:00 p.m. (EDT) by email to mfrankel@bfklaw.com or to Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                    Chapter 11

      Bond Foundry, LLC                          Case no.  20-11793

               Debtor.
-------------------------------------------------------------x

## <u>AMENDED DISCLOSURE STATEMENT</u>

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## **INTRODUCTION**

1.      The Debtor submits this Disclosure Statement ("Disclosure Statement") to explain its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit A.  All Creditors are urged to review the Plan, besides reviewing this Disclosure Statement.  All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2.      This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan to explain the terms and implications of the Plan.  Every effort has been made to fully explain the aspects of the Plan as it affects all Creditors.  To the extent a Creditor has questions, the Debtor urges you to contact its counsel and every effort will be made to assist you.

3.      On ___April 6_____, 2022, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors to make an informed judgment on the Plan.

4.      EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.

5.      Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure Statement.

2

6.      THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR.  THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

7.      The Bankruptcy Court has entered an Order fixing May 25, 2022, at 10:00 a.m. (EDT) at the United States Bankruptcy Court, One Bowling Green, New York, New York  10004, as the date, time and place for a telephonic hearing through Court-Solutions.com on confirmation of the Plan, and fixing May 16, 2022, at 5:00 p.m. (EDT) as the last date for voting and for the filing of any objections to confirmation of the Plan.

## **BACKGROUND**

8.      On August 2, 2020, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

9.      The Debtor is one of 16 subsidiaries of Coworkrs LLC.  The subsidiaries each operate a co-working office in a city in the United States.  Each subsidiary operates a standalone member-based shared-office community, offering licenses to members.  When a location is up and running successfully, the license payments exceed the combined cost of the lease and operating expenses.

10.      Following the Covid-19 work-from home policies, demand dropped.  And with the contraction of the overall economy, many members did not pay license fees or renew contracts.  Many of the license agreements are short-term and involve consistent renewal.  This allows for unique

3

flexibility and mobility for clients.  Since clients could not be in the space, no license agreements were renewed for an extended period, nor was there a market for new members.  That, in turn, resulted in missed rent payments and negotiations with landlords on a location-by-location basis over forbearances, temporary accommodations, and, where possible, lease modifications in line with the COVID-19-adjusted market realities, pending the return to something resembling the pre-pandemic "business as usual."

11.    This case involves the Debtor's lease in Austin, Texas, where such negotiations failed and thus triggered this Chapter 11 filing.

12.    The Debtor Landlord are parties to the Lease dated as of September 14, 2018 covering 27,000 square feet on the second floor (the "Premises") of the Foundry Building at 310 Comal Street, Austin, Texas (the "Building").

13.    By motion dated May 31, 2021, the Debtor sought entry of an order authorizing the Debtor to assume the Lease.

14.    The Debtor determined, in the exercise of its business judgment, that it would be in the Debtor's best interest to assume the Lease.  The reason is simple: the Debtor's business is contingent upon the Lease, and on an operating basis, the Debtor believes it will resume implementation of its business plan, which was in its early stages when the pandemic struck.  Accordingly, by assuming the Lease the Debtor can grow its business and generate cash flow to pay creditors, and, ultimately, make a profit for its parent company.

15.    On October 13 and 14, 2021, the Court conducted a trial on the Debtor's motion to assume.

16.    The Debtor argued that on an operating basis, it was reasonable to conclude that the Debtor would resume implementation of its business plan which was in its early stages when the COVID-19 global pandemic struck.

4

17.     The Court permitted the Debtor to assume the Lease and the Debtor subsequently paid cure costs.

18.     On November 4, 2021, the Court entered an order [Docket No. 153] (the "Lease Assumption Order") authorizing the Debtor to assume the Lease subject to satisfaction of certain conditions. Among these conditions were that the Debtor (i) cause a replacement letter of credit, in the amount of $1,375,614.24 to be issued in favor of the Landlord pursuant to section 16 of the Lease, and (ii) provide the Landlord with additional security of $772,209.54 in the form of a cash security deposit or a fully collateralized parent guaranty.

19.     On or about December 1, 2021, the Debtor provided the Landlord with a cash security deposit of $772,209.54 (the "Lease Security Deposit") as additional security for its obligations under the Lease, as assumed.

20.     On January 31, 2022, Signature Bank (the "L/C Bank") issued a replacement letter of credit in the amount of $1,375,614.24 (the "Replacement L/C") in favor of the Landlord.

21.     On February 17, 2022, the Court entered a stipulated order [Docket No. 167] (the "February 17 Order") acknowledging the Debtor's assumption of the Lease effective January 31, 2022.

22.     Given the necessary cure expenditures, the ongoing lease obligations, and further Covid-19 variant disruptions, the Debtor's cash flow is tight.  The Plan, therefore, proposes to general unsecured creditors a 40% distribution over 12 months as set forth on the projections annexed to the Plan as Exhibit A.

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

## CLASS 1

23.      **Classification** –   Priority Claims under Sections 507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code.  Claims total approximately 0.

24.      **Treatment** – Payment in Cash on the Effective Date of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

25.      **Voting --** Unimpaired and deemed to have accepted the Plan.

## CLASS 2

26.      **Classification** – General Unsecured Claims.  Scheduled Claims, as adjusted by filed claims, total approximately $3,131,625.  $371,542 of this amount represents Coworkers LLC parent company debt and $2,515,000 represents Baruch Singer investor debt.

27.      **Treatment** – Payment in Cash of 12 equal monthly installments commencing on September 1, 2022, for a total of 40% of the Allowed Amount of each Claim.  Coworkrs and Mr. Singer have agreed to defer payment until after Plan payments are made and the Debtor is otherwise able to afford payment.

28.      **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## CLASS 3

29.      **Classification** – Interests Holders.

30.      **Treatment** – Entitled to ownership of new Interests on account of payment of $250,000 to fund Effective Date payments under the Plan.

6

31. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

32. Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code. Filed and Scheduled Claims total approximately 0. The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES AND STATUTORY FEES

33. Allowed Administrative Expenses, including professional fees, shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction. The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately $250,000, and such amount shall be escrowed for payment and then paid in the amount Allowed.

34. Any outstanding U.S. Trustee fees and any interest thereon shall be paid in full in Cash on the date upon which the Confirmation Order is a Final Order, or such other date no later than 60 days after the Confirmation Date as may be practicable. Thereafter, United States Trustee fees and any interest thereon shall be paid until entry of final decree or until the case is converted or dismissed. The Debtor shall file quarterly post-confirmation operating reports. Pursuant to 28 U.S.C. § 1930(a)(6), quarterly fees – inclusive of statutory interest, if any -- will be payable on the last day of the calendar month following the calendar quarter for which the fees are owed.

7

## MEANS FOR IMPLEMENTATION

35.     **Source of Funds** – Effective Date payments under the Plan will be paid from capital to be contributed by the Interest Holders.  The Interest Holder will cause $250,000 to be placed in escrow with Debtor's counsel before the Confirmation Hearing to fund Effective Date payments. Post Confirmation payments will be paid from the Debtor's net operating income, as projected on exhibit A to the Plan.

36.     **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

37.     **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

38.     **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## LIQUIDATION ANALYSIS

39.     In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The Debtor believes that the 40% distribution to general unsecured creditors under the Plan provides at least an equivalent

8

return for the Debtor's estate as could be achieved in a liquidation.  As set forth on Exhibit B hereto, the

Debtor projects that in a Chapter 7 liquidation, the return to the Debtor's estate would be reduced to 25%

by an additional layer of administration legal expenses and commissions, which the Debtor estimates

would total at least 15% of the sale proceeds.  Similarly, in a liquidation, there would be no $250,000

contribution from Interest Holders.

## LITIGATION ANALYSIS

40.     The Debtor is aware of no pending litigation or potential litigation.  The Debtor's

schedules reflect no disbursements within the preference period, nor any distributions to insiders within

the past year.  The Debtor is aware of no claims against third parties.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

41.     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor

reserves the right to file objections to Claims in the event grounds exist to object to particular Claims, for

a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date

as may thereafter be necessary, the Debtor shall maintain an Undetermined Claims Distribution Reserve

for the holders of undetermined Claims as of such date in a sum not less than the amount required to pay

each such undetermined Claim if such claim was allowed in full.  To the extent that an undetermined

claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released

from the Undetermined Claims Distribution Reserve and paid to the holder of such Allowed Claim.  After

all the amounts of all undetermined Claims have been fixed, the balance of the Undetermined Claims

Distribution Reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

42.     In addition to Executory Contracts and leases that the Debtor has assumed before

the Confirmation Date, all Executory Contracts and leases shall be deemed assumed under the Plan on the

9

Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code.  In the event of a lease rejection which results in damages, a proof of claim for such damages must be filed by the non-Debtor with the Court on or before sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan. Notwithstanding the foregoing, the Lease shall not be subject to rejection, and nothing in this paragraph shall be deemed to affect the priority or secured status of claims arising under the Lease.

43.     Notwithstanding anything herein to the contrary, the Lease and the Landlord's interest in the Lease Security Deposit and Replacement L/C shall survive and remain in full force and effect on and after the Effective Date. Further, notwithstanding anything herein to the contrary, the L/C Claims and the L/C Bank's security interest in the L/C Collateral Account shall survive and remain in full force and effect as of and after the Effective Date.

## FINANCIAL PROJECTIONS

44.     Post-confirmation projections are annexed as Exhibit A to the Plan.

## MANAGEMENT OF THE DEBTOR

45.     The Debtor is managed by David Goldwasser, as managing member of GC Realty Advisors, LLC, as Chief Restructuring Officer.  Post-confirmation management shall be controlled by CoWorkrs LLC, the Debtor's parent company under the direction of Elie Deitsch and Shlomo Silber.

## TAX CONSEQUENCES

46.     The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan,

such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt

deduction, Plan distributions may be taxable as income.

47.     THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE

STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX

CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS

UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT

COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE

PLAN.

## VOTING PROCEDURES AND REQUIREMENTS

48.     A ballot for voting to accept or reject the Plan is enclosed with this Disclosure

Statement.  Each creditor is entitled to execute the ballot and return it to the undersigned to be considered

for voting purposes.  The Bankruptcy Court has directed that to be counted for voting purposes, ballots

for the acceptance or rejection of the Plan must be received no later than May 16, 2022 at 5:00 p.m.

(EDT) (the "Voting Deadline") by email to mfrankel@bfklaw.com or at the following address:

> Backenroth Frankel & Krinsky, LLP
> 800 Third Avenue
> New York, New York 10022
> Attn:  Mark A. Frankel, Esq.

49.     Each Creditor of the Debtor whose Claim is impaired under the Plan is entitled to

vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a proof of Claim on or

before the last date set by the Bankruptcy Court for such filings.

50.     Class 2 Creditors, and Class 3 Interest Holders are impaired under the Plan and

are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.

51.     Any Claim as to which an objection has been filed (and such objection is still

pending) is not entitled to vote, pursuant to Section 1126(a) of the Bankruptcy Code, unless the

11

Bankruptcy Court temporarily allows the Claim, pursuant to Bankruptcy Rule 3018, in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the voting deadline in order for any such Creditor's vote to be counted.

52.    A Creditor's vote may be disregarded pursuant to Section 1126(e) of the Bankruptcy Code if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

53.    Section 1126(c) of the Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of the class, i.e., acceptance takes place only if two-thirds in amount and a majority in number of the Creditors actually voting in a class, vote to accept the Plan.

54.    Section 1126(d) of the Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## <u>CONFIRMATION OF THE PLAN</u>

55.    Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

56.    By order of the Bankruptcy Court dated _____April 6_____, 2022, the Confirmation Hearing has been scheduled for May 25, 2022, at 10:00 a.m. (EDT), to be conducted telephonically through Court-Solutions.com by the Honorable Lisa G. Beckerman at the United States Bankruptcy Court, One Bowling Green, New York, New York  10004.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection

12

to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of

service and served upon the following on or before May 16, 2022 at 5:00 p.m. (EDT):

mfrankel@bfklaw.com, Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York

10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy

Rule 9014.

        57.      At the Confirmation Hearing, the Bankruptcy Court will determine whether the

requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the

Plan.  The applicable requirements are as follows:  (a) The Plan complies with the applicable provisions

of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy

Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any

payment made or promised or by a person issuing securities or acquiring property under the Plan, for

services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with

the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such

payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after

confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable,

(e) the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after

confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor

participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment

to, or continuance in, such office of such individual, is consistent with the interests of Creditors and

equity security holders and with public policy, and the Debtor has disclosed the identity of any insider

that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such

insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such

class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest

property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that

such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the

Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

58.    The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

## CRAMDOWN

59.    In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

**THE DEBTOR INTENDS TO INVOKE THE CRAMDOWN PROVISIONS OF SECTION 1129(b) AS TO ANY IMPAIRED CLASS THAT DOES NOT ACCEPT THE PLAN.**

60.    With respect to a Secured Claim, "fair and equitable" means either: (a)  the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

14

61.    "Fair and equitable" has the following meanings for General Unsecured Claims:

(a)    each impaired General Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or

(b)    the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

62.    This is a new value Plan because it requires Interest Holders to contribute $250,000 of new value.  Exclusivity has expired.  Any Creditor is entitled to file a competing plan or object to the new value under the Plan.

63.    In the event one or more classes rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

15

## **CONCLUSION**

64.     The Debtor urges the Debtor's Creditors to vote to accept the Plan and to

evidence such acceptance by returning their ballots so that they will be received no later than May 16,

2022 at 5:00 p.m. (EDT).

Dated:  New York, New York
      April 6, 2022

                  Bond Foundry, LLC
                  Debtor and Debtor in Possession

                  By:      **s/ David Goldwasser, as managing
                          member of GC Realty Advisors, LLC, as Chief
                          Restructuring Officer**

                  **BACKENROTH FRANKEL & KRINSKY, LLP
                  Attorneys for Debtor**

                  By:      s/Mark Frankel
                          800 Third Avenue
                          New York, New York 10022
                          (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re                                                                    Chapter 11

      Bond Foundry, LLC                                      Case no.  20-11793

                 Debtor.
-------------------------------------------------------------x

## **<u>AMENDED PLAN OF REORGANIZATION</u>**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

Bond Foundry, LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.      "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code.

2.      "Administrative Expense Claim" shall mean a claim for payment of an Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

4.      "Allowed Amount" shall mean the amount of a Claim:  (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

5.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or

(ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

6.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

7.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

8.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

9.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

10.     "Bankruptcy Court" shall mean the Court as defined below.

11.     "Bar Date" shall mean March 31, 2021.

12.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

13.     "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

14.     "Claimant" shall mean the holder of a Claim.

15.     "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

16.     "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

17.     "Confirmation Order" shall mean the order of the Court confirming the Plan.

3

18.     "Court" shall mean the United States Bankruptcy Court for the SOUTHERN District of New York.

19.     "Creditor" shall mean any entity that holds a Claim against the Debtor.

20.     "Debtor" shall mean Bond Foundry, LLC.

21.     "Disputed Claim" shall mean the whole or any portion of any Claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

22.     "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date no later than 60 days after the Confirmation Date as may be practicable.

23.     "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

24.     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

25.     "February 17 Order" shall mean the order entered by the Court in the Bankruptcy Case on February 17, 2022, at Docket No. 167.

26.     "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

27.     "Impaired" shall mean not Unimpaired.

28.     "Interest" shall mean an existing ownership interest in the Debtor.

4

29.    "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor. The Debtor's Interest Holder is Coworkrs LLC.

30.    "Landlord" shall mean Foundry Parcel I Owner, L.LC., or its successors and assigns.

31.    "L/C Bank" shall mean Signature Bank, or its successors and assigns.

32.    "L/C Collateral Account" shall mean the account established at the L/C Bank for use in collateralizing the Replacement L/C.

33.    "L/C Claim" shall mean the L/C Bank's claims against the Debtor arising in connection with issuance of the Replacement L/C.

34.    "Lease" – shall mean the office lease by and between the Debtor and Landlord, as successor in interest to Foundry Austin Owner LLC, with an execution date of September 14, 2018, for real property located at Suite #200, The Foundry, 310 Comal Street, Austin, Texas, as amended from time to time, and as assumed pursuant to the Lease Assumption Order and February 17 Order.

35.    "Lease Assumption Order" shall mean the order entered by the Court in the Bankruptcy Case on November 4, 2021, at Docket No. 153.

36.    "Lease Security Deposit" shall mean the Debtor's cash security deposit in the amount of $772,209.54 provided to the Landlord in connection with the Lease Assumption Order.

37.    "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

38.    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

5

39.    "Petition Date" shall mean August 2, 2020.

40.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

41.    "Property" shall mean the Foundry Building at 310 Comal Street, Austin, Texas.

42.    "Replacement L/C" shall mean the replacement letter of credit issued by the L/C Bank in favor of the Landlord in connection with the Lease Assumption Order.

43.    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

44.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

45.    "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

46.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include Administrative Expense claims.

47.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

## CLASS 1

48.    Classification – Allowed  Priority Claims under Sections 507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code.

6

49.     Treatment – Payment in Cash on the Effective Date of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

50.     Voting -- Unimpaired and deemed to have accepted the Plan.

## CLASS 2

51.     Classification -- General Unsecured Claims

52.     Treatment -- Payment in Cash of 12 equal monthly installments commencing on September 1, 2022, for a total of 40% of the Allowed Amount of each Claim.  Coworkrs and Mr. Singer have agreed to defer payment until after Plan payments are made and the Debtor is otherwise able to afford payment.

53.     Voting -- Impaired and entitled to vote to accept or reject the Plan.

## CLASS 3

54.     Classification -- Interests Holders

55.     Treatment –Entitled to ownership of new Interests on account of payment of $250,000 to fund Effective Date payments under the Plan.

56.     Voting -- Impaired and deemed to reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

57.     Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code.  Filed and Scheduled Claims total approximately 0.  The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSE CLAIMS AND STATUTORY FEES

58.    Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

59.    Any outstanding U.S. Trustee fees and any interest thereon shall be paid in full in Cash on the date upon which the Confirmation Order is a Final Order, or such other date no later than 60 days after the Confirmation Date as may be practicable.  Thereafter, United States Trustee fees and any interest thereon shall be paid until entry of final decree or until the case is converted or dismissed.  The Debtor shall file quarterly post-confirmation operating reports.  Pursuant to 28 U.S.C. § 1930(a)(6), quarterly fees – inclusive of statutory interest, if any -- will be payable on the last day of the calendar month following the calendar quarter for which the fees are owed.

## MEANS FOR IMPLEMENTATION

60.    **Source of Funds** – Effective Date payments under the Plan will be paid from capital to be contributed by the Interest Holders.  The Interest Holder will cause $250,000 to be placed in escrow with Debtor's counsel before the Confirmation Hearing to fund Effective Date payments. Post Confirmation payments will be paid from the Debtor's net operating income, as projected on exhibit A to the Plan.

8

61.  **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

62.  **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

63.  **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## DISTRIBUTIONS TO CREDITORS

64.  The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to Claims in the event grounds exist to object to particular Claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an Undetermined Claims Distribution Reserve for the holders of undetermined Claims as of such date in a sum not less than the amount required to pay each such undetermined Claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the Undetermined Claims Distribution Reserve and paid to the holder of such Allowed Claim.  After

9

all the amounts of all undetermined Claims have been fixed, the balance of the Undetermined Claims

Distribution Reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS

65.    In addition to Executory Contracts and leases that the Debtor has assumed

before the Confirmation Date, all Executory Contracts and leases shall be deemed assumed under the Plan

on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code.  In the event of a lease

rejection which results in damages, a proof of claim for such damages must be filed by the non-Debtor

with the Court on or before sixty (60) days after the Effective Date. All Allowed Claims arising from the

rejection of any Executory Contract shall be treated as Unsecured Claims.  Any Claim arising from the

rejection of any Executory Contract not filed with the Court within the time period provided herein shall

be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

Notwithstanding the foregoing, the Lease shall not be subject to rejection, and nothing in this paragraph

shall be deemed to affect the priority or secured status of claims arising under the Lease.

66.    Notwithstanding anything herein to the contrary, the Lease and the Landlord's

interest in the Lease Security Deposit and Replacement L/C shall survive and remain in full force and

effect on and after the Effective Date. Further, notwithstanding anything herein to the contrary, the L/C

Claims and the L/C Bank's security interest in the L/C Collateral Account shall survive and remain in full

force and effect as of and after the Effective Date.

## RETENTION OF JURISDICTION

67.    Retention of Jurisdiction.  The Court shall have jurisdiction over all matters

arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to,

proceedings:

10

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's Estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtor.

- To re-examine Claims which may have been Allowed or Disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

68. **Headings**. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

11

69.    **Disputed Claims**.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid until such Claim becomes an Allowed Claim.

70.    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

71.    **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

72.    **Modification of Plan**.  The Debtor may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND PROPERTY OF THE ESTATE

73.    **Injunction**.  Pursuant to Section 1141 of the Bankruptcy Code, the confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

## **CLOSING THE CASE**

74.     Upon substantial consummation, the Debtor may move for a final decree to close

the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
        April 6, 2022

Bond Foundry, LLC

By:     <u>s/ David Goldwasser, as managing member of GC
Realty Advisors, LLC, as Chief Restructuring Officer</u>

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor

By:     <u>s/Mark A. Frankel</u>
        800 Third Avenue
        New York, New York 10022
        (212) 593-1100

13

## Exhibit A to Plan

**_Bond East Austin_**

| | ACTUAL Jan-21 | ACTUAL Feb-21 | ACTUAL Mar-21 | ACTUAL Apr-21 | ACTUAL May-21 | ACTUAL Jun-21 | ACTUAL Jul-21 | ACTUAL Aug-21 | ACTUAL Sep-21 | ACTUAL Oct-21 | ACTUAL Nov-21 | ACTUAL Dec-21 | PROJECTIONS Jan-22 | PROJECTIONS Feb-22 | PROJECTIONS Mar-22 | PROJECTIONS Apr-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | | | |
| Member Revenue | 143,868.56 | 148,080.50 | 144,202.27 | 147,187.16 | 86,964.13 | 85,585.50 | 89,222.67 | 99,289.12 | 111,275.84 | 124,346.59 | 131,957.50 | 129,264.27 | 169,066.25 | 172,604.22 | 177,881.47 | 186,972.26 |
| Service Revenue | 1,493.11 | 1,996.20 | 3,605.21 | 1,621.95 | 2,411.32 | 2,384.38 | 2,177.00 | 3,678.50 | 1,034.11 | 2,359.86 | 2,421.51 | 2,150.06 | 2,257.56 | 2,370.44 | 2,726.01 | 3,134.91 |
| Other | 317.96 | 1,027.81 | 421.82 | 675.38 | 468.08 | 1,165.68 | 2,717.91 | 2,613.36 | 4,633.44 | 494.21 | 2,909.29 | 411.89 | 2,127.87 | 2,337.66 | 2,517.48 | 2,577.42 |
| **Total Revenue** | 145,679.63 | 151,104.51 | 148,229.30 | 149,484.49 | 89,843.53 | 89,135.56 | 94,117.58 | 105,580.98 | 116,943.39 | 127,200.66 | 137,288.30 | 131,826.22 | 173,451.68 | 177,312.32 | 183,124.96 | 192,684.59 |
| | | | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | | | |
| Rent Expense | 165,338.01 | 165,338.01 | 165,338.01 | 165,338.01 | 165,338.01 | 165,338.01 | 165,338.01 | 165,338.28 | 167,499.14 | 167,499.14 | 167,499.14 | 167,499.14 | 169,821.14 | 169,821.14 | 169,821.14 | 169,821.14 |
| Premise Expense | 11,904.79 | 18,907.21 | 14,970.26 | 13,449.03 | 12,000.18 | 14,283.99 | 11,294.67 | 11,050.92 | 11,829.76 | 12,072.45 | 13,691.18 | 12,216.02 | 20,316.70 | 20,316.70 | 20,316.70 | 20,316.70 |
| Member Services Expenses | 1,387.34 | 978.34 | 1,547.01 | 2,432.96 | 2,586.77 | 2,459.55 | 2,296.05 | 1,216.18 | 2,885.06 | 3,205.51 | 3,451.86 | 3,265.97 | 4,619.97 | 5,075.46 | 5,465.88 | 5,596.02 |
| Salary and Wages | 5,930.39 | 5,764.37 | 3,994.37 | 2,308.81 | 3,180.82 | 6,433.74 | 4,195.95 | 1,970.74 | 6,842.41 | 6,842.71 | 6,837.71 | 7,908.58 | 6,897.59 | 6,897.59 | 11,635.42 | 11,635.42 |
| General Expenses | 2,255.29 | 489.84 | 3,071.25 | 188.75 | 98.75 | 220.82 | 10,532.76 | 5,509.90 | 169.81 | 256.46 | 208.75 | 4,832.97 | 107.92 | 118.56 | 127.68 | 130.72 |
| Marketing and Sales Expenses | - | 40.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 |
| **Total Expenses** | 186,815.82 | 191,517.77 | 189,995.90 | 184,792.56 | 184,279.53 | 189,811.11 | 194,732.44 | 186,161.02 | 190,301.18 | 190,951.27 | 192,763.64 | 196,797.68 | 202,838.32 | 203,304.45 | 208,441.82 | 208,575.00 |
| | | | | | | | | | | | | | | | | |
| **Net Ordinary Income** | (41,136.19) | (40,413.26) | (41,766.60) | (35,308.07) | (94,436.00) | (100,675.55) | (100,614.86) | (80,580.04) | (73,357.79) | (63,750.61) | (55,475.34) | (64,971.46) | (29,386.64) | (25,992.13) | (25,316.86) | (15,890.41) |

| | | At: |
|---|---|---|
| | | **40%** |
| **OUTSTANDING DEBT** | | |
| Cooper Electric | 23,681.39 | 9,472.56 |
| Restoration Hardware | 8,650.00 | 3,460.00 |
| Bway.Inc | 3,188.75 | 1,275.50 |
| OneDiversified LLC | 10,486.95 | 4,194.78 |
| IRS | 921.00 | 368.40 |
| Reed Smith LLP | 144,591.00 | 57,836.40 |
| Nello | 53,564.00 | 21,425.60 |
| | | |
| Coworkrs LLC | 371,542.00 | 148,616.80 |
| Baruch Singer | 2,515,000.00 | 1,006,000.00 |
| | | |
| Total | 3,131,625.09 | 1,252,650.04 |

| PROJECTIONS May-22 | PROJECTIONS Jun-22 | PROJECTIONS Jul-22 | PROJECTIONS Aug-22 | PROJECTIONS Sep-22 | PROJECTIONS Oct-22 | PROJECTIONS Nov-22 | PROJECTIONS Dec-22 | PROJECTIONS Jan-23 | PROJECTIONS Feb-23 | PROJECTIONS Mar-23 | PROJECTIONS Apr-23 | PROJECTIONS May-23 | PROJECTIONS Jun-23 | PROJECTIONS Jul-23 | PROJECTIONS Aug-23 | PROJECTIONS Sep-23 | PROJECTIONS Oct-23 | PROJECTIONS Nov-23 | PROJECTIONS Dec-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 197,970.62 | 207,178.56 | 218,688.48 | 230,837.84 | 242,987.20 | 242,987.20 | 242,987.20 | 242,987.20 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 | 247,846.94 |
| 3,918.64 | 4,898.29 | 6,122.87 | 7,653.59 | 9,566.98 | 11,958.73 | 14,948.41 | 18,685.51 | 23,356.89 | 25,692.58 | 25,692.58 | 26,463.35 | 27,257.25 | 28,074.97 | 28,917.22 | 29,784.74 | 30,678.28 | 31,598.63 | 32,546.59 | 33,522.99 |
| 2,577.42 | 2,697.30 | 2,697.30 | 2,847.15 | 2,847.15 | 2,847.15 | 2,847.15 | 2,847.15 | 2,904.09 | 2,904.09 | 2,904.09 | 2,904.09 | 2,962.17 | 2,962.17 | 2,962.17 | 2,962.17 | 3,021.42 | 3,021.42 | 3,021.42 | 3,021.42 |
| 204,466.68 | 214,774.15 | 227,508.65 | 241,338.58 | 255,401.33 | 257,793.08 | 260,782.76 | 264,519.86 | 274,107.92 | 276,443.61 | 276,443.61 | 277,214.39 | 278,066.37 | 278,884.09 | 279,726.34 | 280,593.86 | 281,546.64 | 282,466.99 | 283,414.95 | 284,391.35 |
| 169,821.14 | 169,821.14 | 169,821.14 | 169,821.14 | 169,821.14 | 169,821.14 | 169,821.14 | 169,821.14 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 | 174,915.77 |
| 20,316.70 | 20,316.70 | 20,316.70 | 20,316.70 | 20,316.70 | 20,316.70 | 20,316.70 | 20,316.70 | 20,519.87 | 20,519.87 | 20,519.87 | 20,519.87 | 20,725.07 | 20,725.07 | 20,725.07 | 20,725.07 | 20,932.32 | 20,932.32 | 20,932.32 | 20,932.32 |
| 5,596.02 | 5,856.30 | 5,856.30 | 6,181.65 | 6,181.65 | 6,181.65 | 6,181.65 | 6,181.65 | 6,243.47 | 6,243.47 | 6,243.47 | 6,243.47 | 6,305.90 | 6,305.90 | 6,305.90 | 6,305.90 | 6,368.96 | 6,368.96 | 6,368.96 | 6,368.96 |
| 11,635.42 | 11,635.42 | 11,635.42 | 11,635.42 | 11,635.42 | 11,635.42 | 11,635.42 | 11,635.42 | 12,217.19 | 12,217.19 | 12,217.19 | 12,217.19 | 12,217.19 | 12,217.19 | 12,828.05 | 12,828.05 | 12,828.05 | 12,828.05 | 12,828.05 | 12,828.05 |
| 130.72 | 136.80 | 136.80 | 144.40 | 144.40 | 144.40 | 144.40 | 144.40 | 145.84 | 145.84 | 145.84 | 145.84 | 147.30 | 147.30 | 147.30 | 147.30 | 148.78 | 148.78 | 148.78 | 148.78 |
| 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,075.00 | 1,085.75 | 1,085.75 | 1,085.75 | 1,085.75 | 1,096.61 | 1,096.61 | 1,096.61 | 1,096.61 | 1,107.57 | 1,107.57 | 1,107.57 | 1,107.57 |
| 208,575.00 | 208,841.36 | 208,841.36 | 209,174.31 | 209,174.31 | 209,174.31 | 209,174.31 | 209,174.31 | 215,127.89 | 215,127.89 | 215,127.89 | 215,127.89 | 215,407.84 | 215,407.84 | 216,018.70 | 216,018.70 | 216,301.45 | 216,301.45 | 216,301.45 | 216,301.45 |
| (4,108.32) | 5,932.79 | 18,667.29 | 32,164.27 | 46,227.02 | 48,618.77 | 51,608.45 | 55,345.55 | 58,980.03 | 61,315.72 | 61,315.72 | 62,086.50 | 62,658.53 | 63,476.25 | 63,707.64 | 64,575.16 | 65,245.19 | 66,165.54 | 67,113.50 | 68,089.90 |
|  |  |  |  | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 | 789.38 |  |  |  |  |
|  |  |  |  | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 | 288.33 |  |  |  |  |
|  |  |  |  | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 | 106.29 |  |  |  |  |
|  |  |  |  | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 | 349.57 |  |  |  |  |
|  |  |  |  | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 | 30.70 |  |  |  |  |
|  |  |  |  | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 | 4,819.70 |  |  |  |  |
|  |  |  |  | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 | 1,785.47 |  |  |  |  |

## EXHIBIT B TO DISCLOSURE STATEMENT

## ASSETS AND LIABILITIES UNDER PLAN

| Assets | |
|---|---|
| Real property lease and misc. personal property | $1,250,000 |
| New Value Contribution | $250,000 |

| Liabilities | |
|---|---|
| Administrative Expense Claims | $250,000 |
| Priority Claims under Sections 507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $3,131,625 |
| **Total** | $3,381,908 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real property lease and misc. personal property | $1,250,000 |

| Liquidation Distributions | |
|---|---|
| Administrative Expense Claims | $450,000 |
| Priority Claims under Sections 507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code. | -0- |
| General Unsecured Claims | $800,000 |
| **Total** | $ 1,250,000 |

Note: All claim amounts subject to objection.